IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RITA CZYZEWSKI,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　　　　Defendant. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil No. 14-7255 (JBS)<br><br><br>**OPINION** |

APPEARANCES:

Lauren S. Tovinsky, Esq.
JACOBS SCHWALBE & PETRUZELLI PC
10 Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
　　　Attorney for Plaintiff Rita Czyzewski

Paul J. Fishman
UNITED STATES ATTORNEY
　　　By: Andrew Charles Lynch
　　　　　Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
300 Spring Garden Street, 6th Floor
Philadelphia, PA 19123
　　　Attorneys for Defendant Commissioner of Social Security

**SIMANDLE**, Chief Judge:

**I. INTRODUCTION**

　　　This matter comes before the Court pursuant to 42 U.S.C. §
405(g) for review of the final decision of the Commissioner of
the Social Security Administration denying Plaintiff Rita
Czyzewski's application for disability insurance benefits under

Title II of the Social Security Act, 42 U.S.C. § 401, et seq.
(the "Act").

Plaintiff principally argues that the Administrative Law
Judge ("ALJ") failed to properly evaluate and weigh the opinion
of the agency consulting physician, Dr. Joan Joynson.
Specifically, Plaintiff contends that the ALJ erred in failing
to adequately address that Dr. Joynson initially identified
Plaintiff's mental impairments as severe, but later changed her
opinion of these impairments to non-severe upon the request of
an agency reviewer. Plaintiff also argues that the ALJ's finding
regarding her residual functional capacity is not supported by
substantial evidence because the ALJ did not account for her
anxiety, depression, and fibromyalgia. Plaintiff also argues
that the ALJ improperly discounted Plaintiff's testimony
regarding her limitations. Plaintiff maintains that the record
is fully developed and ripe for a decision in her favor without
remand.

For the reasons discussed below, the Court rejects
Plaintiff's arguments and will affirm the ALJ's decision.

**II. BACKGROUND**

    **A.  Procedural History**

Plaintiff filed an application for disability insurance
benefits on October 24, 2011, alleging an onset of disability on

July 9, 2010. (R. at 18.) The claim was denied, as was a request for reconsideration. (Id.) Plaintiff appeared at a hearing held on January 17, 2014 before the ALJ, Marguerite Toland. (Id.) Plaintiff was represented by an attorney and elected to give testimony. (Id.) On March 25, 2014, the ALJ denied Plaintiff's appeal at step five of the sequential analysis, finding that Plaintiff was capable of performing past relevant work as a medical secretary. (R. at 29.) The Appeals Council denied Plaintiff's request for review. (R. at 1-6.) Plaintiff then filed the instant action.

**B.   Medical History**

The Court finds the following facts relevant to the present motion. Plaintiff was 59 years-old as of the hearing date, and she had past work experience as a medical secretary. Plaintiff's medical history includes treatment for fibromyalgia, high blood pressure, carpal tunnel syndrome, anxiety, and depression. Plaintiff noted in her testimony that she did not receive continuous treatment for her various medical conditions because she lacked health insurance since leaving her job in November, 2010. (R. at 46.)

**1.   Kennedy Health System**

Plaintiff sought emergency medical attention for anxiety and panic attacks in August, 2002. (R. at 335-44.) Plaintiff

reported severe anxiety over the preceding six weeks, as well as repeated visits to the emergency room for panic attacks. (R. at 339.) She was discharged with a diagnosis of generalized anxiety disorder and prescribed Klonopin, Zoloft, Depakote, and Seroquel. (R. at 339-44.) Plaintiff was to follow up with Dr. Talati. (R. at 339.) The Court is unable to locate any other reference to Dr. Talati in the record, and it is therefore unclear whether Plaintiff received follow-up mental health care as directed.

### 2.   Virtua Family Medicine

On January 13, 2011, Plaintiff was seen at Virtua Family Medicine for abnormal blood pressure and anxiety. (R. at 284.) Plaintiff indicated that she felt like her anxiety was returning. (Id.) Notes from this visit query whether Plaintiff's blood pressure issues were causing her anxiety or vice versa. (Id.) There are no subsequent notes from this facility in the record.

### 3.   Virtua Health Emergency Room

On May 5, 2011, Plaintiff presented at the emergency room with reports of chest pain and diaphoresis which "resolved spontaneously." (R. at 287.) Upon physical exam, emergency room doctors reported no abnormal cardiac findings. (R. at 288.) Plaintiff's EKG was normal. (Id.) Imaging revealed no active

4

disease in the chest, no evidence of ischemia or infarction, and normal left ventricular chamber size and wall motion. (R. at 306-07.)

### 4. Dr. Ferenz

On August 22, 2011, Plaintiff saw Dr. Clint C. Ferenz, M.D., for an evaluation of her right hand. (R. at 313-16.) Plaintiff reported chronic pain in both hands, as well tingling and numbness in her right hand. (R. at 313.) Plaintiff noted increased pain in her hands since she stopped working in November, 2010. (Id.) Plaintiff previously had not sought treatment for the problem. (Id.) Dr. Ferenz attributed Plaintiff's bilateral hand pain to early degenerative arthritis and noted the possibility of right carpal tunnel syndrome. (R. at 314.) Dr. Ferenz recommended follow-up treatment including bracing, nerve study, and possible surgery if right carpal tunnel syndrome is confirmed. (Id.) However, Dr. Ferenz concluded that Plaintiff's complaints "would not inhibit her ability to work at full duty status." (R. at 315.)

### 5. Dr. Goldberg

Plaintiff was examined by Dr. Kenneth Goldberg, Ph.D., on January 17, 2012 as part of a consultative mental status exam. (R. at 317-321.) Plaintiff described a history of panic attacks and general feelings of anxiety. (R. at 318.) Plaintiff

explained that she had not experienced a panic attack recently
and that they only occur "once in a blue moon." (Id.) Plaintiff
reported that when she was working she would experience panic
attacks as frequently as three times per day, but noticed that
the attacks had diminished as she got older. (Id.) Because
Plaintiff tended to experience panic attacks when she was alone,
she seeks the company of people. (Id.) Plaintiff reported a
similar decrease in her symptoms of depression as time passed.
(Id.) She described herself as more often happy than depressed,
said she does not get tearful as she did in the past, and noted
that her periods of depression tend to be short and associated
with lack of sleep. (Id.)

    Dr. Goldberg's report indicates that Plaintiff drove to the
appointment; that Plaintiff can perform ordinary household
tasks; and that she can shop. (R. at 319.) Additionally,
Plaintiff enjoys television and reading. (Id.) She talks with
friends on the phone, but does not spend a lot of time with
them. (Id.) She actively participates in the lives of her
children and grandchildren. (Id.) Plaintiff independently takes
care of her hygiene and appearance. (Id.)

     Dr. Goldberg diagnosed Plaintiff with dysthymic disorder,
in partial remission, and panic disorder, without agoraphobia,
in remission, and assigned Plaintiff a GAF of 65. (R. at 320.)

Dr. Goldberg found "no reason to think that psychiatric issues are currently significant in her decisions to work or not." (R. at 319.)

### 6.   Dr. Cornejo

Dr. Juan C. Cornejo, D.O., completed an orthopedic consultative exam on March 14, 2012. (R. at 323-26.) Plaintiff reported suffering from fibromyalgia and back pain since 1999 and bilateral hand pain since 2003, although she did not receive orthopedic treatment for these conditions.[1] (R. at 323.) Dr. Cornejo found that Plaintiff had a "full range of motion of upper and lower extremities;" "a positive Tinel's sign on the left and right wrist;" "decreased range of motion of the cervical and lumbar spine;" "a negative supine and sitting straight leg raising maneuver test bilaterally;" and "intact fine and gross manipulation." (R. at 326.) Dr. Cornejo described Plaintiff's prognosis as fair in light of her continued complaints of pain in her hands and back despite some treatment. (Id.) "Based primarily upon her subjective reports," Dr. Cornejo found Plaintiff to be "limited from frequent overhead use of her upper extremities, frequent turning and bending of her neck and back and from repetitive heavy lifting." (Id.)

### 7.   Dr. Acuna

---

[1] Plaintiff also noted hip and neck pain which went untreated.

Dr. Jose Acuna, M.D., a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form on April 23, 2012. (R. at 105.) Dr. Acuna determined that Plaintiff could lift and carry 20 pounds occasionally, ten pounds frequently, can stand and walk for six hours in an eight hour workday, sit for six hours in an eight hour workday, with an unlimited ability to push and pull. (Id.) Dr. Leonard Simpson, M.D., and Dr. Melvin Golish, M.D., two other state agency medical consultants, affirmed Dr. Acuna's opinion on May 10, 2012 and August 31, 2012 respectively. (R. at 332-33; 131-34.)

### 8. Dr. Joynson

On March 6, 2012, a state agency medical consultant, Joan Joynson, Ph.D., completed a Psychiatric Review Technique form. (R. at 102-03.) Dr. Joynson's March, 2012 evaluation lists fibromyalgia, carpal tunnel syndrome, as well as Plaintiff's affective and anxiety disorders as severe impairments. (R. at 102.) Dr. Joynson noted mild restrictions of activities of daily living and mild difficulties in maintaining social functioning, in addition to moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (R. at 103.)

Subsequently, on June 13, 2012, Dr. Joynson completed a

8

second Psychiatric Review Technique form altering some of her initial determinations. (R. at 118-19.) Dr. Joynson's June, 2012 evaluation lists fibromyalgia and carpal tunnel syndrome as severe impairments and Plaintiff's affective and anxiety disorders as non-severe. (R. at 118.) Dr. Joynson noted mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (Id.) Dr. Joynson indicated that Plaintiff's mental impairments "are not severe in that she is able to engage in basic work functions, she can adequately adapt to workplace changes for basic work functions and respond appropriately to supervision." (R. at 119.) Dr. Cheryl Sanford, Ph.D., another state agency medical consultant, agreed with Dr. Joynson's opinion on August 31, 2012. (R. at 129-30.)

The Agency's Disability Determination Explanation indicates that Dr. Joynson altered her determination at the request of an agency reviewer. (R. at 115-19.) Indeed, after receiving Dr. Joynson's report, the agency issued a "Request for Corrective Action" which included the following:

> A psychological CE dated 01/17/12 reports [Plaintiff] had a past history of anxiety disorder, but stated her symptoms had diminished to "once in a blue moon", no more than once a week while working. She has not sought psychiatric treatment for the disorder in some time. The claimant also reports a remote history of depression, but no symptoms presently. MSE states

9

some ruminative thoughts but otherwise [within normal
limits]; ADLs unimpaired other than physical limitations; and
a diagnosis of dysthymic disorder in partial remission and
panic disorder without agoraphobia in remission. CE summary
states that she finds her symptoms of both anxiety and
depression have reduced significantly. DDS' MRFC assessment
narrative was not written in program language detailing the
most that the claimant can do despite her mental MDI. However,
the evidence better documents a non-severe impairment, with
no limitations in CPP.

(R. at 239.)

Dr. Joynson, in her June, 2012 assessment acknowledged that

she was asked by an agency reviewer to change "this review to a

'Not severe' rating." (R. at 119.) Dr. Joynson explained that

Plaintiff

has a hx of anxiety which she indeed honestly reported as
improving, and she said that she had no panic attacks when
she was not working. She did report having one panic attack
per week while working - does this constitute a mild or
moderate RFC? This appears to be a matter of judgement [sic].
Certainly, having a panic attack at work would interfere with
cpp and the more complex or demanding a job, the more likely
a panic attack will occur. CL also reports increasing anxiety
which is documented by her PCP in 1/11. This is why I gave
the clmt the benefit of the doubt, which we are encouraged to
do and made the rating a moderate.

(Id.) Dr. Joynson changed her determination to "not severe," but

requested that the Agency "consider cl's hx of anxiety, her

honesty, and her doctor's report of increasing anxiety in 1/11."

(Id.)

C. **Plaintiff's testimony**

Plaintiff testified that she experienced a long history of

depression and anxiety, including panic attacks "once every

10

couple of months." (R. at 45, 59.) In the past, Plaintiff's
panic attacks have included chest pains, profuse sweating, and
headaches. (R. at 67-68.) Plaintiff reported difficulty
concentrating and focusing, as well as difficulty with her
memory. (R. at 60, 65.) Plaintiff says she can watch television,
but lacks the concentration to watch a movie. (R. at 61.)

According to Plaintiff's testimony, she has also suffered
from fibromyalgia, marked by throbbing pain in her hands, neck,
back, and hip. (R. at 45-48.) Plaintiff reports difficulty
getting out of bed on most days, as well as trouble using her
hands. (R. at 49.) She experiences difficulty with buttons and
her hand pain prevents her from using a keyboard. (R. at 53-54.)
Plaintiff relies on her husband and daughter for household tasks
such as cooking, vacuuming, and cleaning. (R. at 49-50, 75.) She
occasionally drives and will accompany her husband to the store,
but he does all of the lifting. (R. at 50.)

**D.  ALJ Decision**

In a written decision dated March 25, 2014, ALJ Toland
determined that Plaintiff was not disabled from July 9, 2010
through the date of decision. (R. at 29.) She found that
Plaintiff had not engaged in substantial gainful activity since
July 9, 2010, the alleged onset date, and concluded that she
suffered from the following severe impairment: carpal tunnel

11

syndrome. (R. at 20.) The ALJ found that Plaintiff's combination of impairments did not meet or medically equal the severity of an impairment listed in the regulations. She described Plaintiff's residual functional capacity ("RFC") as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can lift 20 pounds occasionally, 10 pounds frequently, but must use both hands to lift these amounts, can stand and walk for up to 6 hours per day, but no more than 1 hour at a time and then would need to sit or shift positions for 4-5 minutes every hour while remaining on task. The claimant would be off task up to 5% of the workday in addition to normal breaks and lunch, due to her symptoms.

(R. at 24.) Notably, the ALJ assigned great weight to Dr. Joynson's June, 2012 evaluation finding only mild functional limitations because such an opinion is "consistent with the objective medical evidence and the record as a whole." (R. at 28.) In contrast, the ALJ assigned little weight to Dr. Joynson's earlier evaluation finding moderate limitations in concentration, persistence or pace as it was inconsistent with Dr. Goldberg's evaluation and Plaintiff's own testimony. (Id.) Moreover, in discussing Plaintiff's history of depression and anxiety, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 25.) The ALJ noted numerous inconsistent statements during Plaintiff's testimony. (Id.)

12

After determining Plaintiff's RFC, the ALJ determined that
Plaintiff is capable of performing past relevant work as a
medical secretary, which does not require the work-related
activities precluded by Plaintiff's RFC. (R. at 29.)
Accordingly, the ALJ ruled that Plaintiff was not disabled from
July 9, 2010 through the date of Decision. (Id.)

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's decision pursuant to
42 U.S.C. § 405(g). The Court's review is deferential to the
Commissioner's decision, and the Court must uphold the
Commissioner's factual findings where they are supported by
"substantial evidence." 42 U.S.C. § 405(g); Fargnoli v.
Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r
of Soc. Sec., 507 F. App'x 111, 114 (3d Cir. 2012). Substantial
evidence is defined as "more than a mere scintilla," meaning
"such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." Richardson v. Perales, 402
U.S. 389, 400 (1971); Hagans v. Comm'r of Soc. Sec., 694 F.3d
287, 292 (3d Cir. 2012) (using the same language as Richardson).
Therefore, if the ALJ's findings of fact are supported by
substantial evidence, the reviewing court is bound by those
findings, whether or not it would have made the same
determination. Fargnoli, 247 F.3d at 38. The Court may not weigh

13

the evidence or substitute its own conclusions for those of the ALJ. <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 359 (3d Cir. 2011).

## IV. DISCUSSION

Plaintiff argues that the ALJ erred in failing to properly consider the opinion of state agency medical consultant, Dr. Joynson. Plaintiff also contends that the ALJ failed to properly consider Plaintiff's mental impairments in determining Plaintiff's RFC. Moreover, Plaintiff asserts that the ALJ erred in her assessment of Plaintiff's credibility. The Court will address each argument in turn.

### A.  The ALJ properly considered Dr. Joynson's opinion

The Court notes at the outset that when a conflict in the evidence exists, the ALJ retains significant discretion in deciding whom to credit. <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999); <u>Brown v. Astrue</u>, 649 F.3d 193, 196 (3d Cir. 2011) (noting that "the ALJ is entitled to weigh all evidence in making its finding" and the ALJ is not required to accept the opinion of any medical expert). However, the ALJ "cannot reject evidence for no reason or for the wrong reason." <u>Plummer</u>, 186 F.3d at 429 (citation omitted). "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." <u>Id.</u>; <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 203

14

(3d Cir. 2008) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.") (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)).

Moreover, the opinions of state agency medical consultants merit significant consideration. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(f) and 416.927(f)). The ALJ is required to evaluate and discuss the weight given to state agency medical consultants in the same manner as they are required to discuss the opinions of treating medical and non-medical sources. 20 C.F.R. § 404.1527(e)(2)(ii). When determining whether an ALJ properly considered the opinion of a state agency consultant, indications that the ALJ incorporated other sources into his or her determination can be particularly probative. See Chandler, 667 F.3d at 361–62 (noting, as important, that the ALJ incorporated the opinions of a treating nurse and did not merely "rubber stamp" a state agency consultant's conclusion).

In the present action, Plaintiff contends that the ALJ failed to properly consider the opinion of state agency medical consultant, Dr. Joynson. Plaintiff takes particular issue with the fact that Dr. Joynson's March, 2012 evaluation characterized

15

Plaintiff's depression and anxiety as severe, but Dr. Joynson later changed this characterization to non-severe at the request of an agency quality assurance reviewer. Plaintiff emphasizes that Dr. Joynson changed her opinion at the reviewer's urging, not because of any change in the information before her or any change in Plaintiff's condition.

Plaintiff has accurately recounted Dr. Joynson's change of view, but failed to cite any authority indicating that the ALJ erred in assigning greater weight to Dr. Joynson's second evaluation than the first. The question before the Court is not whether Dr. Joynson's latter assessment is supported by substantial evidence, as Plaintiff suggests, but rather, whether the ALJ's determination is supported by substantial evidence. As such, what Plaintiff deems a "highly improper" intervention by agency personnel, is essentially an objection to the ALJ's weighing of the evidence in the record. The Court finds no error in the ALJ's exercise of discretion when considering Dr. Joynson's evaluations. The ALJ's discussion of Dr. Joynson's opinions is supported by substantial evidence.

The ALJ ascribed "great weight" to Dr. Joynson's June, 2012 opinions finding mild limitations in Plaintiff's activities of daily living, social functioning, and concentration, persistence or pace because such opinions were "consistent with the

16

objective medical evidence and record as a whole." (R. at 27-28.) The ALJ, likewise, assigned great weight to Dr. Joynson's opinions that Plaintiff's mental impairments "were not severe in that she is able to engage in basic work functions." (R. at 28.) Contrary to Plaintiff's assertion, the ALJ did not ignore Dr. Joynson's prior opinions. Instead, the ALJ, as required, adequately explained why she assigned little weight to certain aspects of Dr. Joynson's earlier opinions. Specifically, the ALJ stated, "Little weight is assigned to Dr. Joynson's opinion that the claimant was moderately limited in concentration, persistence or pace, as it is inconsistent with the record. In particular, Dr. Joynson's opinion is inconsistent with her revised, subsequent opinion"[2] and "Dr. Goldberg's evaluation

---

[2] The Court rejects Plaintiff's argument that it was improper for the ALJ to refer to Dr. Joynson's opinions as "conflicting" when, in fact, Dr. Joynson only changed her opinion as the result of allegedly "egregious overreach" by the agency reviewer. (Pl. Br. at 9.) In Plaintiff's view, Dr. Joynson reluctantly made the change as requested by the reviewer, but stood by her original assessment. This is a plausible reading of record. It is equally plausible, however, that Dr. Joynson simply viewed the characterization of Plaintiff's mental impairments as a judgment call and, in the revised evaluation, merely sought to explain her prior characterization. Indeed, Dr. Joynson specifically stated in the June, 2012 evaluation, "This appears to be a matter of judgement [sic]," and she requested that the Agency "consider cl's hx of anxiety, her honesty, and her doctor's report of increasing anxiety in 1/11." (R. at 119.) It is not for this Court upon review to decide which explanation is more plausible. It is sufficient to note that the ALJ did not err in declining to ascribe a nefarious motive to the change and in accepting the two evaluations for what they indisputably were

17

notes which indicated that the claimant has sufficient concentration to repeat 6 digits forward and 5 in reverse, recalled 3/3 objects immediately and after 5 minutes, was able to perform serial 7s with only 1 error, and could spell the word 'world' backwards." (Id.) Additionally, the ALJ assigned "little weight" to Dr. Joynson's opinion that Plaintiff "could sustain work for simple work functions, can adequately adapt to workplace changes for simple work, and respond appropriately to supervision." (Id.) The ALJ again explained that Dr. Joynson's opinion was inconsistent with Dr. Goldberg's evaluation notes, "which reported that the claimant had a neutral mood with normal affective range, clear sensorium, average speech pace, lucid, logical, and goal directed thought processes, had good insight and judgment," as well as Plaintiff's testimony "in which she admitted that she has not sought any psychiatric treatment since her alleged disability onset date, noting that her panic attacks occur only every few months." (Id.) Accordingly, it is clear that the ALJ found Dr. Joynson's opinion as articulated in the June, 2012 evaluation consistent with the objective medical evidence in the record and the record as a whole. The ALJ sufficiently explained why she drew the opposite conclusion as

---

– conflicting. As discussed, the ALJ's decision to assign greater weight to the latter evaluation is sufficiently explained and supported by substantial evidence.

to Dr. Joynson's March, 2012 evaluation. Therefore, the Court
rejects Plaintiff's argument that the ALJ failed to properly
evaluate and weigh Dr. Joynson's opinions.

**B.   The ALJ properly considered Plaintiff's impairments in
determining her RFC**

At step four of the sequential analysis, the ALJ considers
the claimant's residual functional capacity and past relevant
work. 20 C.F.R. § 404.1520. If the claimant can still perform
past relevant work, the claimant is not deemed disabled. Id. If
the ALJ finds that the claimant cannot perform past relevant
work or the claimant does not have past relevant work, the ALJ
uses the claimant's residual functional capacity at step five to
decide if the claimant can perform other work in the national
economy. 20 C.F.R. § 404.1545(a)(5)(ii). The residual functional
capacity assessment considers how limitations regarding
claimant's physical abilities, mental abilities, and any other
abilities affected by his impairments may affect the claimant's
ability to do work on a regular and continuing basis. 20 C.F.R.
§ 404.1545(b)-(d).

The ALJ must consider all relevant medical and other
evidence when determining an individual's residual functional
capacity and must consider limitations imposed by all of an
individual's impairments, even those that are not "severe." 20
C.F.R. § 404.1545(a)(2)-(3); see also SSR 96-8P, 1996 WL 374184,

19

at *5 (S.S.A. July 2, 1996). Such evidence includes medical records, lay evidence, effects of symptoms, including pain that are reasonably attributed to a medically determinable impairment, descriptions and observations of limitations by the claimant and others. 20 C.F.R. § 404.1545(a)(3). Additionally, the ALJ's findings of residual functional capacity must "be accompanied by a clear and satisfactory explanation of the basis on which it rests." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).

Plaintiff argues that the ALJ failed to properly consider Plaintiff's anxiety, depression, and fibromyalgia in assessing Plaintiff's residual functional capacity. The Court disagrees. The ALJ clearly considered Plaintiff's anxiety and depression, which she deemed non-severe impairments at step two,[3] as part of

---

[3] Though styled as an attack on the ALJ's RFC analysis, Plaintiff appears to challenge the ALJ's determinations at step two. Plaintiff asserts that the ALJ improperly characterized her depression, anxiety, and fibromyalgia as non-severe impairments. Even if the ALJ failed to appropriately compile a comprehensive list of impairments that qualify as "severe", under-inclusion at step two constitutes harmless error. See, e.g., Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 149 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); Barlow v. Comm'r of Soc. Sec., Civ. 13-538, 2014 WL 1225560, at *7 (D.N.J. Mar. 24, 2014) ("[A]ny error at step two was harmless because the ALJ continued the sequential analysis."). Because the ALJ continued her analysis beyond step two, the Court need not consider whether it

her RFC determination. The ALJ discussed Plaintiff's history of depression and panic attacks, as well as Plaintiff's report that she gets nervous in rooms of people. (R. at 25.) The ALJ recognized, however, that Plaintiff admitted that she is not taking any medication for her mental health issues; that her panic attacks are less frequent than previously, occurring only once every couple of months; and that she has not sought mental health counseling since 2010. (Id.) The ALJ assigned great weight to Dr. Goldberg's opinion that there "was no reason to think that psychiatric issues were currently significant in [Plaintiff's] decision to work or not" (R. at 27), an opinion which the ALJ previously discussed at length at step two. (R. at 21-23.) Additionally, as discussed above, the ALJ devoted three paragraphs to the opinions of Dr. Joynson and explained in significant detail why she credited some of Dr. Joynson's opinions and not others. It is abundantly clear that the ALJ found Dr. Joynson's opinions characterizing Plaintiff's mental impairments as severe to be inconsistent with the other evidence

---

was error to omit certain other impairments. It is well-settled that the ALJ is required to consider the cumulative effect of all impairments Plaintiff suffers from, regardless of the severity for purposes of step two, in the remainder of its analysis. See 20 C.F.R. § 404.1523. As discussed below, a review of the record makes clear that the ALJ considered all of Plaintiff's alleged impairments, including those not deemed "severe" at step two, in the remainder of the analysis.

in the record, particularly Dr. Goldberg's evaluation. It is not
this Court's role to re-weigh the evidence in the record. See
Gantt v. Comm'r Soc. Sec., 205 F. App'x 65, 67 (3d Cir. 2006)
("[O]ur role is not to weigh the evidence; our role on review is
limited to determining whether substantial evidence supports the
ALJ's denial of disability benefits."). The ALJ's discussion of
Plaintiff's anxiety and depression as part of the RFC
determination is well-explained and supported by substantial
evidence. It is thus untenable to argue that the ALJ failed to
consider limitations imposed by all of an individual's
impairments, even those that are not "severe," as required by
SSR 96-8P.

The same is true of Plaintiff's fibromyalgia. In fact, the
ALJ devoted several pages of her RFC discussion to Plaintiff's
fibromyalgia and carpal tunnel syndrome. The ALJ acknowledged
Plaintiff's reports of pain in her hands, shoulders, neck, and
back, which occurs nearly every day. (R. at 24.) The ALJ also
recounted Plaintiff's testimony that she has difficulty getting
out of bed, buttoning shirts, opening jars and turning knobs, as
well as pain in her legs which make it difficult to stand for
long periods of time. (R. at 24-25.) In addition to discussing
Plaintiff's testimony regarding these conditions, the ALJ also
considered the Adult Third Party Function Report completed by

22

Plaintiff's husband and the reports of state orthopedic
consultant, Dr. Cornejo, and Plaintiff's treating physician, Dr.
Ferenz. (R. at 25-26.) The ALJ noted that despite Plaintiff's
complaints of pain, Dr. Goldberg's report and Plaintiff's own
testimony regarding her functional abilities were "inconsistent
with a finding of disability." (R. at 26.) The ALJ highlighted
Plaintiff's ability to shower independently, wash dishes, drive
a car, and watch her grandson on the weekends. (Id.) Consistent
with the evidence in the record, the ALJ concluded that
Plaintiff could perform light work with certain limitations.
(Id. ("[T]he medical record as a whole supports a conclusion
that the claimant can perform light work with acknowledged
limitations. The undersigned considered the effects of the
claimant's carpal tunnel syndrome and fibromyalgia in assigning
a light residual functional capacity with sit/stand option.")
Therefore, the ALJ's thorough written opinion belies Plaintiff's
argument that she failed to consider Plaintiff's fibromyalgia in
determining Plaintiff's RFC.

### C. The ALJ did not err in her assessment of Plaintiff's credibility

SSR 96-7p requires the ALJ to make credibility
determinations grounded in the evidence and in light of the
entire case record. SSR 96-7p, 1996 WL 374186, at *1 (S.S.A.
July 2, 1996). The ALJ cannot simply state that the "allegations

have been considered" or that they categorically are not credible. Id. at *2. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

In the present case, the ALJ's written decision clearly indicates the weight she assigned Plaintiff's statements and the corresponding reasons. Importantly, the ALJ did not entirely disregard Plaintiff's testimony. The ALJ simply found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely credible." (R. at 25.) The ALJ considered Plaintiff's testimony in concluding that she could perform light work "**with acknowledged limitations**. (R. at 26) (emphasis added). Moreover, the ALJ explained in detail why she questioned the severity of Plaintiff's impairments. See Martin v. Comm'r of Soc. Sec., 547 F. App'x 153, 159 (3d Cir. 2013) (upholding the ALJ's credibility determination when the ALJ (1) stated the claimant's testimony was not credible because it did not comport with the weight of the evidence in the file and (2) described the contrary evidence). The ALJ identified numerous inconsistent

24

statements during Plaintiff's testimony. (R. at 25.) For example, Plaintiff testified that she did not like to be around crowds, yet she also testified she accompanied her husband to the mall. (Id.) Similarly, the ALJ found Plaintiff's testimony that she does not babysit her grandchildren to be inconsistent with her responses on the Function Report indicating that she watches her grandson on the weekend. (Id.) The ALJ also noted inconsistencies between her testimony and her statements to Dr. Goldberg regarding her functional limitations. (R. at 26.) Therefore, the Court finds no error in the ALJ's assessment of Plaintiff's credibility.

The Court is unpersuaded by Plaintiff's argument that it was improper for the ALJ to reject Plaintiff's testimony based on a lack of medical treatment. Plaintiff is correct that the ALJ observed that there were "little to no" treatment records regarding Plaintiff's low back pain and fibromyalgia and "essentially no evidence" that Plaintiff sought any treatment for her anxiety or depression. (R. at 21.) The ALJ later noted that a lack of health insurance prevented Plaintiff from seeking medical treatment for certain conditions, including fibromyalgia. (R. at 24.) As a result, Plaintiff argues that the ALJ has contravened SSR 96-7P which provides that "the adjudicator must not draw any inferences about an individual's

25

symptoms and their functional effects from a failure to seek or
pursue regular medical treatment without first considering any
explanations that the individual may provide, or other
information in the case record, that may explain infrequent or
irregular medical visits or failure to seek medical treatment."
SSR 96-7P, 1996 WL 374186, at *7 (S.S.A. July 2, 1996). However,
the ALJ in these statements appears only to note the lack of
objective medical evidence in the record regarding Plaintiff's
alleged impairments. Indeed, immediately after observing that
there is only a "one sentence notation during a single office
examination" to suggest that Plaintiff's anxiety was returning,
the ALJ states that it is "the claimant's responsibility to
provide medical evidence showing that she has an impairment, and
to show how the impairment affects her functioning during the
time alleged as disabled." (R. at 21.) The ALJ, in so stating at
step two, was discussing whether Plaintiff's anxiety and
depression could be considered severe impairments. She was not
discussing Plaintiff's credibility. To the extent the ALJ did
rely on a lack of medical records in determining Plaintiff's
credibility, it was one of many reasons the ALJ discredited
certain aspects of Plaintiff's testimony. As such, the ALJ's
observation regarding the lack of treatment records was, at
most, harmless error. See Rutherford v. Barnhart, 399 F.3d 546,

553 (3d Cir. 2005) ("[R]emand is not required here because it would not affect the outcome of the case.").

**V. CONCLUSION**

For the foregoing reasons, the Court finds that substantial evidence in the record supports the ALJ's determination that Plaintiff did not have a qualifying disability under the Social Security Act. Therefore, the Court will affirm the Commissioner's final decision. An accompanying Order will be entered.

__June 22, 2015__                         __s/ Jerome B. Simandle__
Date                                       JEROME B. SIMANDLE
                                           Chief U.S. District Judge